UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
    Applicant,

v.                                                                 Case No. 13-MC-61

FOREST COUNTY POTAWATOMI
COMMUNITY, d/b/a Potawatomi
Bingo Casino,
    Respondent.

## DECISION AND ORDER

The Equal Employment Opportunity Commission filed this action to enforce a subpoena it served pursuant to the Age Discrimination in Employment Act ("ADEA" or the "Act") on the Forest County Potawatomi Community (the "Tribe") in its capacity as proprietor of Potawatomi Bingo Casino (the "Casino"). The subpoena seeks information relating to a charge of discrimination filed by Federico Colón, who is not a member of the Tribe but who was employed at the Casino as a "security shift manager." See ECF No. 8-1 at p. 7. The Tribe contends that it is not subject to the ADEA and that therefore the subpoena is invalid. It also contends that the subpoena should not be enforced because the EEOC has failed to conciliate and because the subpoena seeks irrelevant information.

I begin by addressing whether the ADEA applies to the Tribe in its capacity as proprietor of the Casino. The EEOC contends that I do not need to resolve this question in order to enforce the subpoena because cases allow agencies to serve and enforce administrative subpoenas even when it is arguable that the target of the investigation is not

1

covered by the statute in question. See EEOC v. Sidley Austin Brown & Wood, 315 F.3d 696, 699–700 (7th Cir. 2012). Although the EEOC is correct that agencies are generally entitled to serve and enforce subpoenas when coverage under the statute is in question, there is an exception that applies when the information sought by the subpoena is not even arguably relevant to the coverage question. Id.; Reich v. Great Lakes Indian Fish & Wildlife Comm'n, 4 F.3d 490, 491–92 (7th Cir. 1993). That exception applies here. The question of whether the Tribe is covered by the ADEA is a legal one, and the facts relevant to that question are undisputed. Thus, the information sought by the subpoena is not even arguably relevant to the coverage question.

The Tribe's primary argument as to why it is not covered by the ADEA is that it is not an "employer" within the meaning of the Act. This argument presents a question of statutory interpretation, and when interpreting statutes in the context of Indian affairs, courts apply rules of construction designed for this purpose. One such rule is that a statute of general applicability that is silent on whether it applies to Indian tribes is presumed to apply to them. See Smart v. State Farm Ins. Co., 868 F.2d 929, 932 (7th Cir. 1989) (citing Federal Power Comm'n v. Tuscarora Indian Nation, 362 U.S. 99, 116 (1960)). This presumption can be rebutted if: (1) the law touches exclusive rights of self-governance in purely intramural matters; (2) the application of the law to the tribe would abrogate rights guaranteed by Indian treaties; or (3) there is proof by legislative history or some other means that Congress intended the statute not to apply to Indians on their reservations. Donovan v. Coeur d'Alene Tribal Farm, 751 F.2d 1113, 1116 (9th Cir. 1985); see also Smart, 868 F.2d at 932–33. In any of these three situations, Congress must expressly apply a statute to Indians before a court will hold that it reaches them. Here, the ADEA is

2

silent on its applicability to Indian tribes, so if any of the three situations is present, tribes will be exempt from coverage.[1]

Applying the above principles, I first ask whether the ADEA is a law of general applicability and conclude that it is. The coverage language in the Act is broadly worded and provides for few exceptions. Cf. Smart, 868 F.2d at 933 (concluding ERISA is generally applicable because "exemptions from coverage are explicitly and specifically defined, as well as few in number"). Moreover, the coverage language easily encompasses Indian tribes in their capacities as operators of commercial enterprises. The Act applies to any "employer," which is defined in part as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630(b). "Person," in turn, is defined as "one or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized groups of persons." 29 U.S.C. § 630(a). An Indian tribe operating a casino is an "organized group[ ] of persons" and is "engaged in an industry affecting commerce." There is no question that the Tribe meets the twenty-or-more-employees requirement. Thus, the ADEA is a statute of general applicability and must be presumed to apply to Indian tribes in their capacities as operators of commercial enterprises. Cf. Coeur d'Alene, 751 F.2d at 1115 & n.1 (concluding that the Occupational Safety and Health Act is a

---

[1]Another rule of construction is that if a statute is ambiguous, that ambiguity is to be resolved in favor of the Indians. County of Yakima v. Confederated Tribes and Bands of Yakima Indian Nation, 502 U.S. 251, 269 (1992); Montana v. Blackfeet Tribe of Indians, 471 U.S. 759 (1985). I do not find any ambiguities in the statutory provisions that are relevant to this case, and therefore this rule of construction is not applicable.

statute of general applicability and that an Indian tribe in its capacity as operator of a tribal farm is an "organized group of persons . . . engaged in a business affecting commerce").

The Tribe disputes that an Indian tribe is a "person" within the meaning of § 630(a). The basis for this argument is the ADEA's express inclusion of States and State-related entities in its definition of "employer." See 29 U.S.C. § 630(b) ("The term ['employer'] also means . . . a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency . . . ."). The Tribe contends that the separate mention of States and State-related entities implies that governmental entities—including Indian tribes—do not fit within the Act's definition of a "person." If governmental entities did fit within that definition, the Tribe reasons, it would have been superfluous for Congress to separately include States and State-related entities in the definition of "employer." Therefore, argues the Tribe, Indian tribes are not "persons" and cannot be deemed to be "employers" unless, like States and State-related entities, they are separately included in the definition of "employer," which they are not.

For two reasons, I reject the premise that the separate mention of States and State-related entities in the definition of "employer" implies that Indian tribes are not "persons" within the meaning of § 630(a). First, Congress's separate inclusion of States and State-related entities in the definition of "employer" would not be superfluous if the term "person" already encompassed them. This is so because the Age Discrimination in Employment Act of 1967 separately mentioned States and State-related entities in the definition of "employer" in order to make clear that they were not employers and therefore not subject to the Act. See Pub.L. No. 90-202, § 11(b), 81 Stat. 602, 605. It is this language that would have been superfluous if States and State-related entities were not "persons": if they

4

were not "persons," Congress would have had no need to separately indicate that they were not "employers," since the general definition of "employer" depended on the word "person." In 1974, Congress changed its mind and decided that States and State-related entities should be covered by the Act and therefore amended the definition of "employer" to include them. See Fair Labor Standards Amendments of 1974, Publ L. No. 93-259, § 28(a)(2), 88 Stat. 55, 74. Thus, the separate mention of States and State-related entities is not superfluous; it is intended to make clear that Congress had changed its mind as to whether States and State-related entities are covered by the law.

Second, even if States and State-related entities were not "persons" within the meaning of § 630(a), it would not follow that Indian tribes are also not persons. States benefit from the "often-expressed understanding" that "in common usage, the term 'person' does not include the sovereign, and statutes employing the word are ordinarily construed to exclude it." Will v. Michigan, 491 U.S. 58, 64 (1989). Although courts may occasionally treat Indian tribes as sovereigns and exclude them from the term "person" in statutes, see Inyo County v. Paiute-Shoshone Indians, 538 U.S. 701, 709–12 (2003), that is not how courts treat Indian tribes when interpreting generally applicable laws. As noted, when a law is generally applicable, it is presumed to apply to Indian tribes. Thus, a generally applicable law that applies to all "persons" must be presumed to apply to Indian tribes, even if it does not apply to States. The Ninth Circuit's decision in Coeur d'Alene illustrates this point. In that case, the court concluded that an Indian tribe operating a commercial enterprise was a "person" within the meaning of the Occupational Safety and Health Act even though that Act's coverage provisions separately mentioned States and excluded them from coverage. 751 F.2d at 1115 & n.1.

Having concluded that the ADEA is generally applicable and therefore presumed to apply to Indian tribes, I turn to the question of whether one of the three situations described in Coeur d'Alene is present and rebuts the presumption. The only situation that the Tribe claims is present is the law's touching exclusive rights of tribal self-governance in purely intramural matters. See Response at 11, ECF No. 7. Purely intramural matters are matters "such as conditions of tribal membership, inheritance rules, and domestic relations." Coeur d'Alene, 751 F.2d at 1116. Obviously, the ADEA, when applied to the employment relationship between a tribe-operated casino and a non-Indian employee, does not touch on any such matters. See Florida Paraplegic Ass'n v. Miccosukee Tribe of Indians of Florida, 166 F.3d 1126, 1129 (11th Cir. 1999) (finding that a tribe-run restaurant and gaming facility does not fall under the intramural exception). The Tribe attempts to squeeze the employment relationship between a casino and a non-Indian employee into the exception for intramural matters by noting that casino income is an important source of tribal revenue. However, as other courts have recognized, this type of argument is "overbroad" and "proves far too much." Smart 868 F.2d at 935; Coeur d'Alene, 751 F.2d at 1116. The intramural exception does not apply whenever a law "affects self-governance as broadly conceived," since that would render almost every statute of general application subject to the exception. Smart, 868 F.2d at 935. Instead, as the Ninth Circuit determined in Coeur d'Alene, the operation of a commercial enterprise that employs non-Indians—which in that case was a "farm that sells produce on the open market and in interstate commerce"—is not an aspect of tribal self-governance. 751 F.2d at 1116. Thus, the present case does not touch on the Tribe's right to self-governance in purely intramural matters. Accordingly, the Tribe's relationship with Colón is covered by

6

the ADEA.

Before moving on, I note that three other circuits have determined that the ADEA does not apply to Indian tribes in certain circumstances. The first circuit to so determine was the Tenth Circuit in <u>EEOC v. Cherokee Nation</u>, 871 F.2d 937 (10th Cir. 1989). The result in that case rested on the court's conclusion that the dispute involved Indian treaty rights, which rebutted the presumption that statutes of general applicability apply to Indian tribes. <u>Id.</u> at 938 n.3. In the present case, the Tribe does not contend that treaty rights are at stake or point to any such rights that would be affected by applying the ADEA to the casino's employment relationship with a casino employee. Thus, the reasoning of <u>Cherokee Nation</u> does not apply here.

The Eighth Circuit addressed the ADEA's applicability to Indian tribes in <u>EEOC v. Fond du Lac Heavy Equipment and Construction Co., Inc.</u>, 986 F.2d 246, (8th Cir. 1993). In that case, the court concluded that the ADEA was generally applicable but did not apply to the employment relationship between a tribe-operated construction company and an employee who was a member of the tribe because that relationship involved a strictly intramural matter. The Court wrote:

> The facts in this case reveal that this dispute involves a strictly internal matter. The dispute is between an Indian applicant and an Indian tribal employer. The Indian applicant is a member of the tribe, and the business is located on the reservation. Subjecting such an employment relationship between the tribal member and his tribe to federal control and supervision dilutes the sovereignty of the tribe. The consideration of a tribe member's age by a tribal employer should be allowed to be restricted (or not restricted) by the tribe in accordance with its culture and traditions. Likewise, disputes regarding this issue should be allowed to be resolved internally within the tribe. Federal regulation of the tribal employer's consideration of age in determining whether to hire the member of the tribe to work at the business located on the reservation interferes with an intramural matter that has traditionally been left to the tribe's self-government.

Id. at 249. As is evident from the above passage, the Eighth Circuit was concerned about intruding on the relationship between a tribal member and his tribe, given that the tribe's culture and traditions might require consideration of the member's age, and the dispute could be resolved internally within the tribe. None of those concerns are present here. Colón is not a member of the Tribe, and for this reason the Tribe has no interest in applying its cultures and traditions to him. For the same reason, Colón's dispute could not be resolved internally within the tribe. Thus, the Eighth Circuit's reasoning is not applicable to the present case.

The remaining circuit to have addressed the ADEA's applicability to an Indian tribe is the Ninth Circuit. In EEOC v. Karuk Tribe Housing Authority, 260 F.3d 1071 (9th Cir. 2001), the court determined that the ADEA did not apply to an employment relationship between a tribe's housing authority and one of its employees who was a member of the tribe. The court concluded that although the ADEA was generally applicable, its application to the facts of that case would have intruded on the tribe's exclusive right to self-governance in intramural affairs. Id. at 1078–82. Crucial to this determination was the court's view that the tribal housing authority "functions as an arm of the tribal government and in a governmental role . . . [i]t is not simply a business entity that happens to be run by a tribe or its members, but, rather, occupies a role quintessentially related to self-governance." Id. at 1080. The court also stressed that the dispute was "entirely 'intramural,' between the tribal government and a member of the Tribe," and that it did not concern "non-Indians as employers, employees, customers, or anything else." Id. at 1081. Finally, the court pointed out that the tribe had an internal process for adjudicating the dispute, which the claimant had used. Id. Again, none of these facts are true in the

8

present case. The Casino is not an arm of the Tribe's government and does not serve in a governmental role; instead, it is a business run by the tribe. Moreover, the dispute involves a non-Indian, and the Tribe has no internal process for adjudicating the dispute. Thus, Karuk Tribe does not suggest that the present dispute between Colón and the Casino involves purely intramural matters.

In addition to arguing that it is not an "employer" within the meaning of the ADEA, the Tribe argues that it is not covered by the law because the EEOC had previously stated that the Tribe is not subject to the ADEA. On November 8, 2012, the EEOC dismissed a charge of discrimination filed by Willie Smith, Sr. In the dismissal letter and notice of right to sue, the EEOC stated that it was closing its file because the Tribe "is exempt from Title VII and ADEA coverage." See ECF No. 8-1. The Tribe contends that the EEOC is bound by this statement and cannot now attempt to subject the Tribe to the ADEA. Although the Tribe does not clearly identify why it thinks the EEOC is bound by a statement made in a dismissal determination,[2] it cites one case recognizing that an agency cannot change a definitive interpretation of a regulation without following the notice-and-comment procedures in the Administrative Procedure Act. See Resp. Br. at 7 n.2, citing Mortgage Bankers Ass'n v. Harris, 720 F.3d 966 (D.C. Cir. 2013). But this case is not relevant. The EEOC has promulgated no regulation stating that Indian tribes are not subject to the ADEA, and so the dismissal determination does not modify the EEOC's interpretation of one of its own regulations. The Tribe cites no other authority suggesting that the EEOC

---

[2]The EEOC suggests that the Tribe is invoking equitable estoppel, but the Tribe does not use that term or cite any cases employing it. Thus, I do not consider whether equitable estoppel applies in the present circumstances.

9

could be bound by a statement made in a dismissal determination.[3]  Accordingly, I conclude that the EEOC is not bound by the statement made in the Smith dismissal determination.

The Tribe also suggests that sovereign immunity might protect it from the EEOC's subpoena.  But, as the Tribe concedes, Resp. Br. at 6, courts have uniformly held that an Indian tribe's sovereign immunity does not apply to claims brought by the United States.  See Florida Paraplegic Ass'n, 166 F.3d at 1135; Reich v. Mashantucket Sand & Gravel, 95 F.3d 174, 182 (2d Cir. 1996); Smart, 868 F.2d at 932.  The Tribe does not argue that these cases were wrongly decided, and so I conclude that sovereign immunity does not prevent it from having to comply with the EEOC's subpoena.

The Tribe next argues that the EEOC may not enforce its subpoena because it has failed to conciliate.  The Tribe cites no case holding that the EEOC is required to conciliate before it may serve and enforce an administrative subpoena.  Instead, it cites the general statutory language stating that the EEOC is required to conciliate.  See 29 U.S.C. § 626(b).  However, as the Seventh Circuit has recently held, failure-to-conciliate is not an affirmative defense to a discrimination suit.  EEOC v. Mach Mining, 738 F.3d 171, 172 (7th Cir. 2013).  One of the reasons the court gave in support of this holding is the lack of a meaningful legal standard to apply in determining whether the EEOC has tried hard enough to settle a dispute.  Id. at 175.  This reason applies with equal force to the present situation, in which failure to conciliate is being asserted as a defense to an administrative subpoena

---

[3]In addition to Mortgage Bankers Association, the Tribe cites Hoctor v. U.S. Department of Agriculture, 82 F.3d 165 (7th Cir. 1996). However, I am unable to find anything in the latter case which even remotely suggests that the EEOC is bound by a statement made in a dismissal determination.

rather than a lawsuit. Thus, I conclude that the EEOC's alleged failure to conciliate does not excuse the Tribe from having to comply with the subpoena.

Finally, the Tribe argues that the subpoena seeks irrelevant information, namely, information relating to age-based complaints made by employees other than Colón around and after the time of his termination. I conclude that this information is relevant, as it is designed to determine how the Casino treated similarly situated employees and whether the Casino has a policy or practice of discriminating against employees on the basis of age.

## CONCLUSION

For the reasons stated, **IT IS ORDERED** that the Tribe shall comply with the subpoena within thirty days of the date of this order.

Dated this 6th day of May 2014.

s/ Lynn Adelman
LYNN ADELMAN
United States District Judge
